**[Cite as *State v. Hamilton*, 2022-Ohio-967.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                        Court of Appeals No.  WD-20-089

        Appellee                               Trial Court No.  2020CR0208

v.

Russell Hamilton                              **DECISION AND JUDGMENT**

        Appellant                              Decided:  March 25, 2022

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee

Jeffrey P. Nunnari, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Russell Hamilton, appeals the judgment of the Wood County

Court of Common Pleas, convicting him, following a guilty plea, of one count of

endangering children and one count of felonious assault, and sentencing him to an

indefinite prison term of 16 to 20 years.  For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} On June 11, 2020, the Wood County Grand Jury returned a three-count indictment. In count one, appellant was charged with endangering children in violation of R.C. 2919.22(B)(1) and (E)(2)(d), a felony of the second degree. In count two, appellant was charged with endangering children in violation of R.C. 2919.22(A) and (E)(2)(c), a felony of the third degree. In count three, appellant was charged with felonious assault in violation of R.C. 2903.11(A)(1) and (D)(1)(a), a felony of the second degree.

{¶ 3} On November 6, 2020, appellant withdrew his initial plea of not guilty, and entered a plea of guilty to counts one and three of the indictment. In exchange, the state agreed to dismiss count two—the third-degree felony charge of endangering children. Additionally, as part of the written plea agreement, appellant agreed that the offenses in count one and count three would not merge. This provision was repeated during the plea hearing, and appellant's counsel agreed. Furthermore, appellant acknowledged that the two sentences could be ordered to be served consecutively for a total prison term of 16 to 20 years.

{¶ 4} As part of the plea hearing, the state described the facts giving rise to the charges. On October 10, 2019, appellant was watching his two-year-old stepson, B.K., and his two-year-old daughter, K.H. While in appellant's care, B.K. suffered serious injuries that required him to be hospitalized for almost three weeks. The injuries included a fractured skull, a brain bleed, damage to the brain tissue, and bilateral retinal

2.

hemorrhaging. As a result, B.K. had to be sedated, put on a ventilator, and be tube-fed. B.K. also suffered a bacterial infection, and had seizures and respiratory failure. The state offered that the testimony would have shown that the injuries were akin to shaken baby syndrome, and because B.K. was two years old, the amount of force required to cause the injuries was significant. The state argued that the evidence would have further shown that the injuries were caused by an intentional act by appellant.

{¶ 5} Following a detailed Crim.R. 11 plea colloquy, the trial court accepted appellant's plea and found him guilty.

{¶ 6} At the sentencing hearing on December 11, 2020, the trial court imposed maximum eight-year prison terms on each count to be served consecutively for a total indefinite prison term of 16 to 20 years.[1] In determining that consecutive sentences were appropriate, the trial court found that consecutive sentences were necessary to protect the public and punish appellant, that the multiple offenses were committed as part of a course of conduct and the harm was so great or unusual that no single prison term adequately reflected the seriousness of appellant's conduct, and that consecutive sentences were not disproportionate to appellant's conduct and the danger that he posed to the public. In describing its reasoning for the sentences, the trial court commented that appellant, out of anger, harmed a two-year-old child that was entrusted to him, and that the child suffered physical and psychological harm that will impact him for the rest of his life.

---

[1] The additional four-year "tail" under the Reagan Tokes law was attached to count one.

3.

## II. Assignments of Error

{¶ 7} Appellant has timely appealed his judgment of conviction, and now asserts four assignments of error for our review:

1. The trial [court] erred as a matter of law by not merging the offenses of child endangering and felonious assault, notwithstanding appellant's plea agreement, as consecutive sentences are contrary to law under the facts of this case.

2. Appellant was denied due process and the effective assistance of counsel as guaranteed by the state and federal constitutions.

3. The trial court erred to the prejudice of appellant by sentencing him to two consecutive sentences on the basis of a course of conduct where the record fails to demonstrate that appellant engaged in two or more offenses as a course of conduct.

4. Count one of the indictment omits the material element of *mens rea*, thereby rendering it defective for failure to state an offense.

## III. Analysis

## A. Allied Offenses

{¶ 8} In his first assignment of error, appellant argues that his convictions for endangering children and felonious assault should have merged for purposes of sentencing.

{¶ 9} In addition to other protections, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, protect against "multiple punishments for the same offense." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The General Assembly has codified this protection in R.C. 2941.25. *Id.* R.C. 2941.25 provides,

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 10} Appellant contends that there is nothing in the record to suggest that the offenses were committed separately or with a separate animus, or that the two offenses caused separate, identifiable harms. Thus, appellant concludes that he should not have been convicted of both offenses.

{¶ 11} However, as argued by the state, "[i]t is possible for an accused to expressly waive the protection afforded by R.C. 2941.25, such as by 'stipulating in the

5.

plea agreement that the offenses were committed with separate animus.'" *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 20, quoting *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 29.

{¶ 12} Here, the record very clearly demonstrates that as part of the plea agreement, appellant agreed that the offenses of endangering children and felonious assault did not merge. Therefore, we hold that appellant has waived the issue of merger. *See State v. Haser*, 5th Dist. Muskingum No. CT2020-0029, 2021-Ohio-460, ¶ 24, 29 (issue of allied offenses waived where the written plea agreement stated that "[t]he parties stipulate that the counts herein do not merge"); *State v. Black*, 2016-Ohio-383, 58 N.E.3d 561, ¶ 17-18 (8th Dist.) (issue of allied offenses waived where the defendant agreed that the felonious assault and domestic violence counts "would not merge for purposes of sentencing").

{¶ 13} Accordingly, appellant's first assignment of error is not well-taken.

## B. Ineffective Assistance

{¶ 14} In his second assignment of error, appellant argues that trial counsel rendered deficient performance by stipulating in the plea agreement that the counts of endangering children and felonious assault did not merge for purposes of sentencing.

{¶ 15} To prove a claim of ineffective assistance, appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings

6.

would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 16} In this case, appellant entered a guilty plea. We have recognized that

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea.

*State v. Rivera*, 6th Dist. Wood Nos. WD-19-085, WD-19-086, 2021-Ohio-1343, ¶ 10, quoting *State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992). "In other words, a defendant's guilty plea waives the right to assert an ineffective-assistance-of-counsel claim unless the defendant argues that 'counsel's errors affected the knowing and voluntary character of the plea.'" *Id.*, quoting *State v. Green*, 11th Dist. Trumbull No. 2017-T-0073, 2018-Ohio-3536, ¶ 18-19; *see also State v. Nguyen*, 6th Dist. Lucas No. L-05-1369, 2007-Ohio-2034, ¶ 18 ("[O]n appeal, a defendant who enters a guilty plea may only raise ineffective assistance of counsel in relationship to whether counsel caused the defendant's plea to be less than knowing and voluntary."); *State v. Hayes*, 6th Dist. Lucas No. L-14-1249, 2016-Ohio-330, ¶ 11; *State v. Gegia*, 157 Ohio App.3d 112, 2004-Ohio-2124, 809 N.E.2d 673, ¶ 17-18 (9th Dist.).

7.

{¶ 17} Here, appellant does not argue that his plea was not knowingly or voluntarily entered. Moreover, even if we were to ascribe to appellant the argument that his plea was not knowing, intelligent, and voluntary due to counsel's ineffectiveness, we find that the record before us does not demonstrate that counsel was ineffective.

{¶ 18} We start with the well-settled premise that "[a] properly licensed attorney is presumed effective in his or her representation of a defendant," *Rivera* at ¶ 9, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Oftentimes, when discussing whether counsel's performance fell below an objective standard of reasonableness, we focus on whether counsel's specific conduct is reasonable. However, the issue in this case centers on the threshold question of what conduct we are evaluating. Stated another way, in order to determine if counsel's conduct fell below an objective standard of reasonableness, we must know what counsel's conduct was. Our view is that we presume that counsel's conduct was whatever would be reasonable under the circumstances—in this case informing appellant of the legal arguments surrounding merger—and appellant must show otherwise.[2]

{¶ 19} The evidence contained in the record regarding counsel's advice to appellant is comprised of counsel's statements during the plea hearing that counsel understood the plea agreement as described by the state—which specified that the

---

[2] Although we do not decide the issue now, we have no cause to doubt that it would be unreasonable for trial counsel to fail to properly advise appellant on the issue of merger before entering into a plea agreement.

offenses would not merge—that counsel reviewed the plea documents "[i]n some specific detail with my client previous to today and then again today before coming into court," and that counsel believed that appellant was entering the plea knowingly and voluntarily. In addition, appellant stated during the plea colloquy that he read the document with his attorney present, that any questions he had were fully and completely answered, that he did not have any other questions about the document at that time, and that when he signed the document he was acknowledging that he "had read, understood, and most importantly * * * agreed with what was in the document." Appellant further acknowledged that he was satisfied with the advice and counsel of his attorneys, and that everything the judge told him was consistent with what his attorneys said.

{¶ 20} Also relevant to the question of counsel's advice to appellant is the following exchange from the sentencing hearing, wherein counsel expressed some uncertainty or confusion regarding the issue of merger in the plea agreement:

THE COURT: Thank you very much. And the state's position is that according to 2929.14(C)(4) that the Court could impose consecutive sentences.

[THE STATE]: It is, Your Honor. We would note, I think, that was part of the plea agreement. There was an agreement that the offenses did not merge.

[DEFENSE COUNSEL]: I don't know that was part of the plea agreement. In the event the Court were to impose consecutive sentences I

would want to write on that following sentencing, Your Honor. So I would ask some opportunity to file an objection.

* * *

THE COURT: Well, I guess I would say this, [defense counsel]. If the Court does impose a consecutive sentence, you can file a motion to reconsider the sentence pursuant to the possibility of merger. I would indicate, and you know this -- I want to say it on the record -- that does not toll the appeal time. So there's where the question is. I am guessing that you're probably going to appeal a consecutive sentence as being a merger. And the State is indicating that there was an agreement that they did not merge. * * *

* * *

THE COURT: I have the plea papers. I'll just take a look. The parties agree that Count One and Count Three do not merge.

[DEFENSE COUNSEL]: Fair enough.

Notably counsel did not subsequently file any motions or objections on the issue of merger.

{¶ 21} The dissent concludes that counsel's uncertainty or confusion at the sentencing hearing affirmatively demonstrates that counsel was ignorant of the terms of the plea agreement, and therefore could not have explained the non-merger stipulation to appellant. We disagree.

10.

{¶ 22} The dissent's conclusion is one inference that can be drawn from counsel's statements at the sentencing hearing. We are not oblivious to the record before us, and we agree that it is possible that counsel failed to fully explore the issue of merger with appellant. We also acknowledge that such a possibility is supported by the existence of a potentially strong argument for the merger of the offenses in this case.[3] However, the dissent's conclusion is in direct conflict with counsel's statements at the plea hearing wherein he confirmed the terms of the plea agreement as articulated by the state—which specifically included the provision that the offenses would not merge—and asserted that he reviewed the terms of the plea agreement with appellant on at least two occasions. Furthermore, we find it significant that appellant has never claimed that counsel failed to inform him regarding the non-merger stipulation. Appellant did not make that claim during the plea hearing, at sentencing, in a postconviction filing, or even in his appellate brief.

{¶ 23} On the other hand, it is also possible that counsel in the moment simply forgot the terms of a plea agreement that was entered into over a month earlier. Counsel conceded the issue when the agreement was read by the trial court at sentencing, and did not file any additional motions or memoranda despite the trial court's invitation to do so.

---

[3] We are hesitant to opine on the issue of merger based upon the state's recitation of facts at the plea hearing where the issue of merger was stipulated and was not in dispute, as we do not discount the possibility that additional evidence could have been adduced had merger been at issue. Indeed, we often state that parties may not litigate issues for the first time on appeal for the reason that the record may not have been fully developed.

{¶ 24} The fact that we cannot say which scenario is true because the record does not disclose what advice counsel gave to appellant resolves the issue. Where the record is silent we presume the regularity of the proceedings, and we presume that counsel was competent. It remains that "the burden of proving ineffectiveness is on the defendant." *Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus ("Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.").

{¶ 25} Thus, as it stands, the record is silent on the specific advice given to appellant, and any conclusion that appellant was not informed on the issue of merger rests entirely on assumptions and speculation, which we do not think is sufficient to overcome the presumption that counsel was competent and counsel's express statements that he understood the terms of the plea agreement and reviewed the plea documents "in some specific detail" with appellant. *See State v. Short*, 192 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 129 (ineffectiveness claim based on failure to investigate mitigation fails because "the record does not show the extent of counsel's investigation," and counsel advised the court that they had "made a thorough investigation of mitigating evidence * * * including inquiries of family members and other persons"); *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 226 (ineffective assistance claim fails where psychiatric report shows some mitigating factors, but "the record does

12.

not show that Perez's counsel failed to investigate those factors. We cannot infer a defense failure to investigate from a silent record."). Therefore, we hold that appellant's claim of ineffective assistance must fail.[4]

{¶ 26} Accordingly, appellant's second assignment of error is not well-taken.

### C. Consecutive Sentences

{¶ 27} In his third assignment of error, appellant argues that the trial court erred when it imposed consecutive sentences because the record does not support a finding that appellant engaged in a course of conduct. Specifically, appellant argues that the record shows that there was only one act of aggression towards the victim. Appellant asserts that a single act cannot constitute a course of conduct.

{¶ 28} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 16. R.C. 2953.08(G)(2) allows us to "increase, reduce, or otherwise modify a sentence," or "vacate the sentence and remand the matter to the sentencing court for resentencing" if we clearly and convincingly find either "(a) That the record does not support the

---

[4] We also disagree with the dissent's proposal to solicit additional briefing by the parties. This is not a new issue that we identified and the parties have not addressed. Consequently, there is little justification to exercise our discretion to "address errors not assigned or argued, with notice to the parties and an opportunity to brief additional issues." Furthermore, it appears to us that what the dissent is truly seeking is additional facts regarding the advice that counsel gave to appellant before appellant entered into the plea agreement ("potentially egregious facts;" "[s]hould these facts prove true"). However, it is axiomatic that we cannot add facts to the record before us, and then decide the appeal based on those new facts. *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus.

sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant," or "(b) That the sentence is otherwise contrary to law."

{¶ 29} Appellant's argument challenges the trial court's findings under R.C. 2929.14(C)(4), which states, in relevant part,

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> * * *
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶ 30} Upon review, we find that appellant's argument rests upon a faulty premise. Appellant argues that the record shows only one act of aggression. However,

14.

appellant stipulated in his plea agreement that the offenses of endangering children and felonious assault did not merge. Thus, despite his argument that there was only one act, appellant has admitted and pled guilty to committing two separate offenses. Furthermore, the offenses occurred on the same day and against the same victim. Therefore, we cannot clearly and convincingly find that the record does not support the trial court's finding that "multiple offenses were committed as part of one or more courses of conduct."

{¶ 31} Accordingly, appellant's third assignment of error is not well-taken.

### D. Defective Indictment

{¶ 32} Finally, in his fourth assignment of error, appellant argues that count one of the indictment is defective because it does not include the mens rea of "recklessly."

{¶ 33} At the outset, we note that appellant did not object to the alleged defect in the indictment in the trial court, thus he has waived all but plain error. *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, paragraph three of the syllabus. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Plain error does not exist unless 'but for the error, the outcome of the trial clearly would have been otherwise.'" *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609, ¶ 11, quoting *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). "The plain-error rule is applied 'under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *Long* at 97.

15.

{¶ 34} In count one, appellant was charged with endangering children in violation of R.C. 2919.22(B)(1) and (E)(2)(d), which provides,

(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

(1) Abuse the child;

* * *

[(E)](2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following * * *:

* * *

(d) If the violation is a violation of division (B)(1) of this section and results in serious physical harm to the child involved, a felony of the second degree.

{¶ 35} Appellant correctly identifies that the endangering children statute does not identify a specific mens rea for the offense. Thus, the Ohio Supreme Court has held that the culpable mental state is recklessness, and that recklessness is an essential element of the crime of endangering children. *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980), paragraph one of the syllabus.

{¶ 36} Appellant argues that because count one of the indictment does not include the essential element of recklessness, it is defective. However, the Ohio Supreme Court has recognized that "[a]n indictment that charges an offense by tracking the language of

16.

the criminal statute is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state." *Horner* at paragraph one of the syllabus.

{¶ 37} Here, the indictment states that the defendant, on or about October 10, 2019, "did abuse B.K. DOB 09/14/2017, a mentally or physically handicapped child under twenty-one years of age 09/14/2017.  Furthermore, the violation resulted in serious physical harm to B.K. DOB 09/14/2017."  We find that the language of the indictment tracks the language of the criminal statute in that it alleges that appellant abused a child, and that the violation resulted in serious physical harm to the child.  Therefore, we hold that the indictment is not defective for failing to include the culpable mental state of recklessness because it tracks the language of R.C. 2919.22(B)(1) and (E)(2)(d), and the statute itself does not specify a culpable mental state.

{¶ 38} Accordingly, appellant's fourth assignment of error is not well-taken.

### IV. Conclusion

{¶ 39} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Wood County Court of Common Pleas is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

_____
JUDGE

Gene A. Zmuda, J.
DISSENTS AND WRITES
SEPARATELY.

**ZMUDA, J.**

{¶ 40} Because I would address issues related to appellant's second assignment of error, and consider whether appellant's trial counsel was ineffective relative to the plea agreement, I dissent from the majority's decision.

{¶ 41} In October, 2019, B.K., the two-year-old child of appellant's girlfriend, was admitted to the hospital with a fractured skull, brain injury, and bilateral retinal hemorrhaging, conditions consistent with shaken baby syndrome. Appellant was charged with endangering children by abuse in violation of R.C. 2919.22(B)(1) and (E)(2)(d) in Count One, endangering children by violating a duty of care, protection, or support in

violation of R.C. 2919.22(A) and (E)(2)(c) in Count Two, and felonious assault in violation of R.C. 2903.11(A)(1) and (D)(1)(a) in Count Three.

{¶ 42} On November 6, 2020, appellant entered a guilty plea to Counts One and Three of the indictment, with the state agreeing to dismiss Count Two. The prosecutor recited the terms of the plea into the record:

> PROSECUTOR: * * * My understanding is the defendant will be pleading guilty to Counts One and Three of the indictment, Count Two will be dismissed at sentencing. Count One is endangering children, Ohio Revised Code Section 2919.22(B)(1) and (E)(2)(d), a felony of the second degree. Count Three is felonious assault, Ohio Revised Code Section 2903.11(A)(1) and (D)(1)(a), also a felony of the second degree. The parties have agreed these two charges do not merge. And the State is free to recommend. Thank you.

Appellant's trial counsel agreed that the terms, recited in the record, were accurate and had been discussed "in some specific detail" prior to hearing and again the day of hearing "before coming into court."

{¶ 43} The trial court then conducted the Crim.11 colloquy with appellant, and pertinent to this appeal, informed appellant that a maximum sentence of 8 years could be imposed as to each count, with an indefinite sentence imposed for one of the two counts under the Reagan Tokes law, for a potential tail of 4 years as to one 8-year prison term. The trial court then stated:

19.

THE COURT: Mr. Hamilton, I also want to explain to you this. If certain circumstances are available, under the Revised Code, specifically under 2929.14(C), the Court could impose a consecutive term, that means one sentence after another. So the Court could impose eight years followed by eight years with a tail of four years. Do you understand that?

[APPELLANT]: I do.

THE COURT: That means you can have imposed up to twenty years. Do you understand that?

[APPELLANT]: I do.

{¶ 44} At the trial court's request, the prosecutor outlined the facts that would have been proven if the matter proceeded to trial. Significantly, the prosecutor noted that medical providers "all reported that *the injury* that [B.K.] sustained was abuse" and "*[t]his injury* is commonly referred to as shaken baby syndrome" and "[all] of this points to not an accident but instead *an intentional act* by the defendant." The trial court accepted appellant's guilty plea and found appellant guilty as to Counts One and Two, endangering children in violation of R.C. 2919.22(B)(1) and (E)(2)(d) and felonious assault in violation of R.C. 2903.11(A)(1) and (D)(1)(a), each a felony of the second degree. The trial court then continued the matter for sentencing on December 11, 2020, and ordered a presentence investigation report.

{¶ 45} There is nothing within the record demonstrating appellant was advised of his double jeopardy rights, relative to merger, or the possible, aggregate prison term that

20.

could be imposed should he proceed to trial and be found guilty of all Counts as indicted. Had appellant received such an explanation, he would have learned that – if Counts One and Three merged as arising from the same conduct as potentially supported by the record on appeal – appellant could have been sentenced to a maximum term of 8 years as to either Counts One or Three, depending on the state's election, and a maximum of 36 months as to Count Two, pursuant to R.C. 2929.14(A)(3)(b). Therefore, appellant faced a total potential aggregate sentence of a minimum term of 11 years with a potential 4-year tail under the Reagan Tokes law, prior to his plea. Thus, appellant's maximum sentence would likely have been shorter had he entered a guilty plea to the charges as indicted and prevailed on his merger argument, without any plea agreement. Considering the record on appeal, his maximum exposure would have been a potential sentence of 15 years as opposed to the maximum potential sentence of 20 years arising from the plea, which included a stipulation to no merger despite the facts presented.

{¶ 46} On the date of sentencing, the trial court reiterated the possibility of consecutive sentences, and for the first time, appellant's trial counsel took issue with imposition of consecutive sentences, seemingly unaware of the agreement that Counts One and Three did not merge. The prosecutor at that hearing was filling in for the lead prosecutor on the case, and did not have first-hand knowledge of plea negotiations.

> THE COURT: * * * And the State's position is that according to 2929.14(C)(4) that the Court could impose consecutive sentences.

21.

PROSECUTOR: It is, Your Honor. We would note, I think, that was part of the plea agreement. There was an agreement that the offenses did not merge.

TRIAL COUNSEL: I don't know that was part of the plea agreement. In the event the Court were to impose consecutive sentences I would want to write on that following sentencing, Your Honor. So I would ask some opportunity to file an objection.

PROSECUTOR: And I'm just relating my e-mail from [the lead prosecutor] indicates in the plea papers the parties agreed that Count One and Count Three do not merge, for what that is worth.

THE COURT: Well, I guess I would say this, * * *. If the Court does impose a consecutive sentence, you can file a motion to reconsider the sentence pursuant to the possibility of merger. I would indicate, and you know this – I want to say it on the record – that does not toll the appeal time. So there's where the question is. I am guessing that you're probably going to appeal a consecutive sentence as being a merger. And the State is indicating that there was an agreement that they did not merge. [Prosecutor], is that a correct statement?

PROSECUTOR: I don't have the plea paper in front of me. I'm just restating what was indicated.

22.

THE COURT:        I have the plea papers.  I'll just take a look.

["]The parties agree that Count One and Count Three do not merge.["].

TRIAL COUNSEL: Fair enough.

The record reveals an absence of any follow up after appellant's trial counsel raised a misunderstanding of the agreement and objected to consecutive sentences.  The trial court, moreover, did not inquire of trial counsel as to whether he needed time to confer with appellant about the scope of his misunderstanding, and the trial court never questioned whether the parties truly reached agreement regarding non-merger of two offenses which, by operation of law, might merge according to the facts placed in the record.

{¶ 47} The state then read letters from B.K.'s grandmother and aunt, as the sole victim impact statements proffered on the record.  To the extent these letters referenced injuries, the references addressed a single incident.  Appellant's presentence investigation report contained reports of prior incidents, but there is nothing in the record demonstrating appellant was charged for any incident beyond the head injury inflicted on B.K. on October 10, 2019.  After hearing from appellant's counsel and the state, the trial court determined the conduct fell within the worst and most serious conduct for the offenses, and imposed the maximum 8 year prison term as to each Count.  The trial court then determined "that these are multiple offenses" for purposes of consecutive sentencing.

23.

{¶ 48} To demonstrate ineffective assistance of counsel, appellant must show that his trial counsel's performance fell below an objective standard of reasonableness and that, but for his counsel's error, there is a reasonable probability that the proceedings would have ended differently. *See Strickland v. Washington,* 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In this case, the assigned error concerns trial counsel's failure to pursue merger and his stipulation that the counts did not merge, with no argument relative to a voluntary, knowing, intelligent plea. Therefore, appellant's guilty plea arguably waived the issues argued within the assignment of error, with the exception of a challenge to the knowing and voluntary nature of the plea itself based on these issues, as noted by the majority. (Citations omitted) *State v. Rivera,* 6th Dist. Wood No. WD-19-085, 2021-Ohio-1343, ¶ 10.

{¶ 49} The sole issue raised and argued concerns application of merger, and in this case, it appears an argument for merger might be supported. The facts recited into the record indicate appellant injured B.K., causing a condition consistent with shaken baby syndrome, as the conduct underlying both the child endangering/child abuse and felonious assault charges. In other words, the record does not appear to demonstrate a separate and identifiable injury as to each, separate charge.

{¶ 50} We address the appeal "on its merits on the assignments of error set forth in the briefs[.]" App.R.12(A). However, we may also – in our discretion – address errors not assigned or argued, with notice to the parties and an opportunity to brief additional issues. *State v. Moore,* 154 Ohio St.3d 94, 2018-Ohio-3237, 111 N.E.3d 1146, ¶ 17,

24.

citing *State v. 1981 Dodge Ram Van,* 36 Ohio St.3d 168, 170, 522 N.E.2d (1988); *C. Miller Chevrolet, Inc. v. Willoughby Hills,* 38 Ohio St.2d 298, 301, 313 N.E.2d 400 (1974), fn. 3. I disagree with the majority's conclusion of waiver and the presumption of effective trial counsel, considering the information within the record on appeal.

{¶ 51} The record on appeal demonstrates that appellant's trial counsel lacked an understanding of the terms of the plea agreement. In essence, trial counsel advised acceptance of a plea agreement that negotiated away a lesser potential prison term for a longer term, by stipulating to non-merger of the offenses. Most significant, moreover, is that trial counsel indicated ignorance of the terms of the plea agreement to the trial court. It follows, therefore, that trial counsel could not have explained these terms of the plea agreement, implicating the knowing, voluntary, and intelligent nature of appellant's plea. While the majority presumes the regularity of the proceedings, including proper advisement by trial counsel to appellant regarding the plea and merger, the record affirmatively demonstrates counsel lacked the knowledge to provide the proper advisement. Specifically, trial counsel's ignorance and surprise over the terms of the plea agreement, acknowledged by the majority, appears irreconcilable with a presumption of proper, competent advisement of those unknown terms.[5] I would consider this issue, and direct the parties to brief the issue in order to address all issues together on appeal.

---

[5] After the prosecutor stated "There was an agreement that the offenses did not merge[,]" appellant's trial counsel responded, "I don't know that was part of the plea agreement."

{¶ 52} I therefore disagree with the majority's decision, and based on the potentially egregious facts regarding effective assistance of counsel relative to the plea, I would seek additional argument on the issue. Considering these facts, I also believe that this is a case where an appellate court might confidently speculate as to how appellant might have proceeded if the strengths and weaknesses of the legal arguments on the issue of merger had been explained to him. Appellant entered a plea that arguably carried more exposure than the potential sentence he faced had he entered a guilty plea to the indictment, required the trial court to consider applicability of merger, and preserved that issue for appellate review. Should these facts prove true, it is difficult to envision a more apt example of ineffective assistance of counsel, and exercise of discretion in addressing these facts is therefore necessary.

{¶ 53} Accordingly, I would address appellant's second assignment of error, and direct the parties to brief the issue of merger relative to a knowing and voluntary plea. As the issue of effective assistance of counsel regarding the plea is potentially dispositive in this case, I respectfully dissent.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.